### THE P. R. R. NO. 556.

### THE ARGOSY.
No. 12909.

District Court, E. D. New York.
Dec. 20, 1932.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for libelant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (John C. Donovan, of New York City, of counsel), for claimant.

BYERS, District Judge.

At about 7:30 p. m. on March 30, 1931, the libelant's car float P. R. R. No. 556 came into contact with the stem of the steamship Argosy, in the East River, about under the Brooklyn Bridge, some 400 feet off the Brooklyn shore.

The Argosy was headed up stream, inclining to the Brooklyn shore, and was held by her port anchor which had been dropped in order to stop her way, in an effort to avoid the collision.

The car float was outside of a like craft, both in tow alongside to starboard of the Pennsylvania tug Elmira; the tow was headed down stream, having left Wallabout shortly after 7:00 o'clock, bound for Jersey City.

The fact of contact is the only clearly established element in the case. Each navigating officer blames the other for the collision, and their narratives are not to be reconciled.

In a measure, it is thought that each side has presented truthfully a point of view which was necessarily circumscribed.

The night was clear, but dark; a light northwest wind was blowing, and the ebb tide had been running for about half an hour, of a force of 9/10 of a mile per hour.

The car floats were about 240 feet long, 40 feet in beam, and each carried 10 freight cars, 5 on each track, which apparently were loaded because the floatman was inspecting seals at the time involved.

The Elmira is a Diesel tug, electric drive, 104.6 feet long with a 24-foot beam. Her stern was about flush with that of the floats; hence they projected nearly 140 feet forward of her stem, to starboard.

The tow proceeded down the East River, and, somewhat below the Manhattan Bridge, passed an up-bound tow, port to port, after exchange of one-whistle signals. The El-

mira is said to have been about 500 feet off the Brooklyn shore in this vicinity. If she was running parallel to the shores of the river, her heading was a trifle south of west, and a prolongation of her assumed course would cause her to fetch up on the pier at the foot of Fulton street, Manhattan.

Immediately after passing the tow referred to, the Elmira observed the Argosy bound up stream. The position of the latter at that point of time is the subject of dispute, but the probabilities point to her being nearer to the Brooklyn shore than otherwise, and about opposite Fulton street, Manhattan. The East River statute would so require, and the practice of tugs having tows was to so incline on the prevailing tide. The Argosy was being piloted by Dougherty, master of a McAllister tug which was alongside but not made fast to or assisting the Argosy, and the latter was proceeding at about 4 knots under her own power.

The Argosy is a single screw turbine steamer, 390 feet long, 54.2 feet beam, having a depth of side of 27.8 feet, and a draft of 17 feet aft and 12 feet forward at this time, being part laden; she had left Edgewater, N. J., bound for the pier at East 18th street, Manhattan.

The finding, as to the position in the stream of the Argosy when sighted by the Elmira, is based in part upon the testimony of the claimant's witnesses, and in part upon the fact that a person standing in the pilot house of the Elmira, when she was in the course indicated, would have a view of the starboard side of the Argosy, rather than the extent of the river on her port side, and might therefore be misled into thinking that she was closer to the Manhattan shore than was actually the fact.

The Elmira says she blew two whistles, for a starboard passing, and the Argosy says it was a one-whistle blast.

This conflict cannot be reconciled, and no attempt to that end will be made.

The relative positions, as visualized by the court, suggest that the Elmira thought a starboard passing was proper, and the Argosy thought a port passing was indicated.

Each side testifies that the Argosy blew one whistle. The Elmira insists that this was a "cross signal," and the Argosy urges that it was an acceptance.

It is found that the libelant has not sustained the burden of proving that it was a "cross signal."

Each vessel observed the port light of the other, when they came into mutual view, and, as the Argosy expected the Elmira to continue in her then heading, the port passing was acceptable; as the Elmira thought the Argosy was nearer to the Manhattan shore than she actually was, perhaps the starboard passing seemed to be the easier of accomplishment, and the two-blast signal would naturally have been blown.

Perhaps it was the one blast blown to the tow first encountered by the Elmira, which the Argosy understood to be intended for her own guidance. In any case, the Argosy blew a second one blast, according to her testimony, which is denied for the Elmira.

Then a collision was seen to be likely, and each vessel accuses the other of veering to port; each blew three-whistle alarm signals, though the first to do so cannot be stated.

The Argosy let go her port anchor and lost her way in about three or four minutes, and her anchor chain was taut in the ebb tide when the contact occurred. The Elmira reversed her engines, which swung her bow to port and her tow to starboard, and the latter swung broadside down stream with the tide, resulting in contact between the starboard, i. e., the outside corner, of P. R. R. No. 556 and the stem of the Argosy.

Both the tow and the steamship maintained proper lookouts, and there seems to be no reason why this collision took place, except upon the theory suggested of the mistaken notion of the master of the Elmira as to the actual position of the Argosy in the stream, when she was first sighted; this can be explained by the bend which the course of the river takes between the Battery and the Manhattan Bridge.

The Elmira insists that she was on the Brooklyn side of the stream, and, notwithstanding, is constrained by no proverbial small consistency, in asserting that the Argosy, being on the Manhattan side, was violating the East River statute.

For the reasons herein sought to be indicated, it is not thought that the libelant has sustained the burden of proof, and the claimant may have a decree of dismissal, with costs, to be settled on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.